UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DREW J. PELTOLA,

       Petitioner,

          v.

MICHIGAN PAROLE BOARD,

       Respondent.[1]

_____/

CASE NO. 2:11-CV-15532
JUDGE VICTORIA A. ROBERTS
MAGISTRATE JUDGE PAUL J. KOMIVES

## REPORT AND RECOMMENDATION

*Table of Contents*

I.     RECOMMENDATION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
II.    REPORT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
    A.    *Procedural History* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
    B.    *Factual Background Underlying Petitioner's Conviction* . . . . . . . . . . . . . . . . . . . . . . . . 4
    C.    *Standard of Review* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5
    D.    *Discussion* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8
         1.    *Clearly Established Law* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8
         2.    *Analysis* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10
             a. Failure to Call Alibi Witnesses . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10
             b. Failure to Object to Amendment of Information . . . . . . . . . . . . . . . . . . . . . . 12
             c. Failure to Investigate . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13
    E.    *Recommendation Regarding Certificate of Appealability* . . . . . . . . . . . . . . . . . . . . . . . 15
         1.    *Legal Standard* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15
         2.    *Analysis* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16
    F.    *Conclusion* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17
III.   NOTICE TO PARTIES REGARDING OBJECTIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

---

[1]By Order entered this date, the Michigan Parole Board has been substituted in place of Thomas Birkett as the proper respondent in this action.

I.     <u>RECOMMENDATION</u>: The Court should deny petitioner's application for the writ of habeas corpus and should deny petitioner a certificate of appealability.

II.    <u>REPORT</u>:

A.    *Procedural History*

1.    Petitioner Drew J. Peltola is a former state prisoner, currently on parole.[2]

2.    On October 1, 2008, petitioner was convicted of delivery of less than 50 grams of heroin, MICH. COMP. LAWS § 333.7401(2)(a)(iv); and conspiracy to deliver less than 50 grams of heroin, MICH. COMP. LAWS §§ 333.7401(2)(a)(iv), 750.157a, following a jury trial in the Dickinson County Circuit Court.  On October 20, 2008, he was sentenced to concurrent terms of 46 months to 40 years' imprisonment, to be served consecutive to his parole for a prior drug offense.

3.    Petitioner appealed as of right to the Michigan Court of Appeals raising, through counsel, the following claims:

I.    DEFENDANT PELTOLA IS ENTITLED TO RESENTENCING WHERE THE TRIAL COURT IMPROPERLY DOUBLED THE STATUTORY SENTENCING GUIDELINES' MINIMUM SENTENCE RANGE BASED ON MCL 333.7413(2).  THE TRIAL COURT IMPOSED MINIMUM TERMS THAT EXCEED THE PROPER GUIDELINES RANGE WITHOUT BELIEVING THEM TO BE UPWARD DEPARTURES.

---

[2]Petitioner's release on parole does not deprive this Court of jurisdiction.  "The federal habeas statute gives the United States district courts jurisdiction to entertain petitions for habeas relief only from persons who are '*in custody* in violation of the Constitution or laws or treaties of the United States.'" *Maleng v. Cook*, 490 U.S. 488, 490 (1989) (per curiam) (quoting 28 U.S.C. § 2241(c)(3)) (emphasis supplied by Court); *see also*, 28 U.S.C. § 2254(a).  This requires "that the habeas petitioner be 'in custody' *under the conviction or sentence under attack* at the time his petition is filed."  *Maleng*, 490 U.S. at 490; *see also, Carafas v. LaVallee*, 391 U.S. 234, 238 (1968).  Petitioner is "in custody" here because (a) a petitioner on parole is "in custody" for purposes of habeas corpus, *Jones v. Cunningham*, 371 U.S. 236, 240-41 (1963); *DePompei v. Ohio Adult Parole Auth.*, 999 F.2d 138, 140 (6th Cir. 1993), and (b) petitioner was incarcerated at the time he filed his application, and jurisdiction is not defeated where the petitioner is in custody at the time the petition is filed, *Carafas v. LaVallee*, 391 U.S. 234, 238 (1968); *York v. Tate*, 858 F.2d 322, 324 (6th Cir. 1988).

II.     MR. PELTOLA MUST BE AWARDED 183 DAYS JAIL CREDIT ON THE SENTENCES IN THE INSTANT CASE EVEN THOUGH HE WAS ON PAROLE WHEN THE OFFENSES WERE COMMITTED. THE DENIAL OF JAIL CREDIT IN THIS CASE CONTRADICTS THE PLAIN LANGUAGE OF THE SENTENCE CREDIT, CONSECUTIVE SENTENCING, AND PAROLE STATUTES.

III.    MR. PELTOLA'S CONSTITUTIONAL DOUBLE JEOPARDY, DUE PROCESS, AND EQUAL PROTECTION GUARANTEES WERE VIOLATED WHEN HE DID NOT RECEIVE CREDIT AGAINST THE NEW MINIMUM SENTENCE FOR CRIMES COMMITTED WHILE ON PAROLE, US CONST, AMS V, XIV; CONST 1963, ART 1, §§ 15, 17, 20.

IV.     THE PRESENTENCE REPORT MUST BE CORRECTED TO REFLECT CHANGES ORDERED BY THE COURT BUT NOT YET MADE.

Petitioner also filed a *pro se* supplemental brief, raising the following additional claim:

WAS DEFENDANT PELTOLA DENIED A FAIR TRIAL AND EQUAL PROTECTION DUE TO INCOMPETENT TRIAL ATTORNEY? WAS ATTORNEY'S CONDUCT OR PERFORMANCE SO BELOW NORMAL PROFESSIONAL STANDARDS THAT IT PREJUDICED DEFENDANT AND DENIED HIM EFFECTIVE ASSISTANCE OF COUNSEL, AND VIOLATED DUE PROCESS AND CONSTITUTIONAL RIGHTS?

The court of appeals found no merit to petitioner's claims, and affirmed his convictions and sentences, while remanding for correction of the presentence report. *See People v. Peltola*, No. 288578, 2009 WL 3366240 (Mich. Ct. App. Oct. 20, 2009) (per curiam).

4.     Petitioner, through counsel sought leave to appeal his first and third issues to the Michigan Supreme Court. Petitioner also filed a *pro se* application for leave to appeal raising his ineffective assistance of counsel claim. The Supreme Court denied petitioner's *pro se* application for leave to appeal in a standard order, but directed the Clerk to schedule oral argument on the application for leave to appeal filed by counsel. *See People v. Peltola*, 488 Mich. 876, 788 N.W.2d 661 (2010). Following oral argument, the Supreme Court issued an opinion rejecting petitioner's sentencing claims and affirming his sentences. *See People v. Peltola*, 489 Mich. 174, 803 N.W.2d

3

140 (2011).

5.      Petitioner, proceeding *pro se*, filed the instant application for a writ of habeas corpus on December 19, 2011.  As grounds for the writ of habeas corpus, he raises the ineffective assistance of counsel claim that he raised in the state courts.

6.      Respondent filed his answer on June 25, 2012.  He contends that petitioner's claim is without merit.

7.      Petitioner filed a reply to respondent's answer on July 9, 2012.

B.      *Factual Background Underlying Petitioner's Conviction*

Petitioner's convictions arise from the packaging and selling of heroin by petitioner and several accomplices on April 18-19, 2008.  The evidence adduced at trial is accurately summarized in respondent's answer:

> On Friday, April 18, 2008, Petitioner called Stacie Munday and asked her if she could give Petitioner's friend, Jeff Tramontine, a ride to Escanaba "to meet a friend."  Munday picked Tramontine up at Amidon Apartments (where Petitioner lived) and took him to meet Roy Milligan.  Milligan had his own vehicle and followed them back to Amidon Apartments.  Milligan had heroin in his car.  When Munday got back to Petitioner's apartment, she saw Petitioner, Milligan, and Tramontine there.  At Petitioner's apartment, Milligan, Petitioner, and Tramontine packaged up the heroin for sale.
>
> Later that night, Tramontine, Petitioner, and Milligan came over to Munday's house.  Petitioner was on his cell phone, telling someone that they needed to get rid of some of the heroin quickly.  Milligan was supposed to come to town, get a large sum of money, and leave again, and he was getting nervous that it had not worked out that way.  So Petitioner decided to start making sales.  That evening, young kids came in and out of Munday's residence, and Petitioner made about 10 to 15 transactions.  Petitioner gave the proceeds to Milligan.  Petitioner sold two packets of heroin to Nicole Strutz for $70, collecting the money himself.  During both Friday and Saturday, Petitioner was in and out of Munday's apartment.
>
> Munday engaged in sales the next day, selling what she could at Petitioner's behest.  She called Laura Moore, Eugene Aman, and Barb Osieczonek and told them she had heroin for sale.
>
> After Munday called her, Barbara Osieczonek contacted Iron Mountain Police Detective Lieutenant Eric Haber and told him that Stacie Munday had heroin

4

for sale. Munday had called Osieczonek around 10 a.m. to tell her about the heroin and ask if she wanted to buy any. Based on this information, Haber set up Osieczonek to do a controlled buy from Munday. Osieczonek explained that she called Haber because she hated heroin and she was concerned about Munday doing heroin with her little girl in the house.

Detective Haber provided $40 for the buy, which consisted of a $20 bill and two $10 bills, all of which were imaged for later identification. The buy took place at Munday's home at 513 Sagola in Kingsford around 11:12 a.m. that morning. Osieczonek carried a "wire" in her purse that allowed the police to monitor her conversations while she was in the house.

When Osieczonek got to Munday's home, she saw Munday, her children, a blonde woman she did not know, a black man she did not know (whom she later found out was Anthony Milligan), and Petitioner there. Munday got the heroin from Petitioner. Osieczonek gave $40 to Munday and Munday then immediately handed the money to Petitioner. Petitioner then went into the bathroom with Milligan. Petitioner soon came back out of the bathroom, came back to the bedroom, and handed Munday a packet. Munday asked if she could have half of the heroin pack, but Osieczonek said no. Osieczonek took the packet and left, having been there around five minutes total. The Michigan State Police lab later verified that the material Osieczonek purchased was heroin.

The $20 bill used for the buy was later recovered at 7:45 p.m. that same day in the possession of Anthony Milligan, as part of a wad of cash totaling $595. Milligan was stopped while driving with Petitioner as his passenger.

Answer, at 10-12 (citations to trial transcript omitted).

C.     *Standard of Review*

Because petitioner's application was filed after April 24, 1996, his petition is governed by the provisions of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. No. 104-132, 110 Stat. 1214 (Apr. 24, 1996). *See Lindh v. Murphy*, 521 U.S. 320, 326-27 (1997). Amongst other amendments, the AEDPA amended the substantive standards for granting habeas relief by providing:

(d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court

of the United States; or

      (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

"[T]he 'contrary to' and 'unreasonable application' clauses [have] independent meaning." *Williams v. Taylor*, 529 U.S. 362, 405 (2000); *see also*, *Bell v. Cone*, 535 U.S. 685, 694 (2002). "A state court's decision is 'contrary to' . . . clearly established law if it 'applies a rule that contradicts the governing law set forth in [Supreme Court cases]' or if it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [this] precedent.'" *Mitchell v. Esparza*, 540 U.S. 12, 15-16 (2003) (per curiam) (quoting *Williams*, 529 U.S. at 405-06); *see also*, *Early v. Packer*, 537 U.S. 3, 8 (2002); *Bell*, 535 U.S. at 694. "[T]he 'unreasonable application' prong of § 2254(d)(1) permits a federal habeas court to 'grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court but unreasonably applies that principle to the facts' of petitioner's case." *Wiggins v. Smith*, 539 U.S. 510, 520 (2003) (quoting *Williams*, 529 U.S. at 413); *see also*, *Bell*, 535 U.S. at 694. However, "[i]n order for a federal court to find a state court's application of [Supreme Court] precedent 'unreasonable,' the state court's decision must have been more than incorrect or erroneous. The state court's application must have been 'objectively unreasonable.'" *Wiggins*, 539 U.S. at 520-21 (citations omitted); *see also*, *Williams*, 529 U.S. at 409. As the Supreme Court has explained, the standard for relief under § 2254(d) "is difficult to meet, [and] that is because it was meant to be." *Harrington v. Richter*, 131 S. Ct. 770, 786 (2011). As the Court explained, "[s]ection 2254(d) reflects the view that habeas corpus is a 'guard against extreme malfunctions in the state criminal justice system,' not a substitute for ordinary error correction through appeal." *Id.* (quoting

*Jackson v. Virginia*, 443 U.S. 307, 332 n.5 (1979) (Stevens, J., concurring in the judgment)).  Thus, "[a]s a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement."  *Id.* at 786-87.

By its terms, § 2254(d)(1) limits a federal habeas court's review to a determination of whether the state court's decision comports with "clearly established federal law as determined by the Supreme Court."  Thus, "§ 2254(d)(1) restricts the source of clearly established law to [the Supreme] Court's jurisprudence."  *Williams*, 529 U.S. at 412.  Further, the "phrase 'refers to the holdings, as opposed to the dicta, of [the] Court's decisions as of the time of the relevant state-court decision.'  In other words, 'clearly established Federal law' under § 2254(d)(1) is the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision." *Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003) (citations omitted) (quoting *Williams*, 529 U.S. at 412).  The relevant "clearly established law" is the law that existed at the time of the last state court decision to issue a reasoned decision on the claim, *see Greene v. Fisher*, 132 S. Ct. 38, 44-45 (2011), and in evaluating the reasonableness of that decision a federal habeas court is limited to the record that was before the state court at the time of its decision, *see Cullen v. Pinholster*, 131 S. Ct. 1388, 1398-99 (2011).

Although "clearly established Federal law as determined by the Supreme Court" is the benchmark for habeas review of a state court decision, the standard set forth in § 2254(d) "does not require citation of [Supreme Court] cases–indeed, it does not even require *awareness* of [Supreme Court] cases, so long as neither the reasoning nor the result of the state-court decision contradicts

them." *Early*, 537 U.S. at 8; *see also*, *Mitchell*, 540 U.S. at 16.  Further, although the requirements of "clearly established law" are to be determined solely by the holdings of the Supreme Court, the decisions of lower federal courts are useful in assessing the reasonableness of the state court's resolution of an issue.  *See Williams v. Bowersox*, 340 F.3d 667, 671 (8th Cir. 2003); *Phoenix v. Matesanz*, 233 F.3d 77, 83 n.3 (1st Cir. 2000); *Dickens v. Jones*, 203 F. Supp. 2d 354, 359 (E.D. Mich. 2002) (Tarnow, J.).

D.     *Discussion*

Petitioner seeks habeas relief on the basis that his counsel rendered constitutionally ineffective assistance at trial.  Specifically, petitioner contends that counsel was ineffective for failing to: (1) call alibi witnesses; (2) object to an amendment of the information; and (3) conduct proper pretrial discovery and investigation.  The Court should conclude that petitioner is not entitled to habeas relief on these claims.

1.     *Clearly Established Law*

The Sixth Amendment right to counsel and the right to effective assistance of counsel protect the fundamental right to a fair trial.  *See Strickland v. Washington*, 466 U.S. 668, 687 (1984).  To establish the ineffective assistance of counsel, petitioner must show that: (1) counsel's errors were so serious that "counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment;" and (2) counsel's deficient performance prejudiced the defense.  *Id*. at 687.  These two components are mixed  questions of law and fact.  *Id*. at 698.  Further, "[t]here is no reason for a court deciding an ineffective assistance claim . . . to address both components of the inquiry if the defendant makes an insufficient showing on one."  *Id*. at 697.  If "it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, . . . that course should be

followed." *Id.*  With respect to the performance prong of the *Strickland* test, a strong presumption

exists that counsel's behavior lies within the wide range of reasonable professional assistance. *See*

*id.* at 689; *see also O'Hara v. Wigginton*, 24 F.3d 823, 828 (6th Cir. 1994).  "[D]efendant must

overcome the presumption that, under the circumstances, the challenged action 'might be considered

sound trial strategy.'" *Strickland*, 466 U.S. at 689 (citation omitted).  "[T]he court should recognize

that counsel is strongly presumed to have rendered adequate assistance and made all significant

decisions in the exercise of reasonable professional judgment."  *Id.* at 690.  With respect to the

prejudice prong, the reviewing court must determine, based on the totality of the evidence before

the factfinder, "whether there is a reasonable probability that, absent the errors, the factfinder would

have had a reasonable doubt respecting guilt."  *Id.* at 695.  It is petitioner's burden to establish the

elements of his ineffective assistance of counsel claim.  *See United States v. Pierce*, 63 F.3d 818,

833 (6th Cir. 1995) (petitioner bears the burden of establishing counsel's ineffectiveness); *Lewis v.*

*Alexander*, 11 F.3d 1349, 1352 (6th Cir. 1993) (same).

As the Supreme Court has recently explained, *Strickland* establishes a high burden that is

difficult to meet, made more so when the deference required by § 2254(d)(1) is applied to review

a state court's application of *Strickland* to claims adjudicated on the merits by the state courts:

> "Surmounting Strickland's high bar is never an easy task." *Padilla v.*
> *Kentucky*, 559 U.S. ----, ----, 130 S.Ct. 1473, 1485, 176 L.Ed.2d 284 (2010). An
> ineffective-assistance claim can function as a way to escape rules of waiver and
> forfeiture and raise issues not presented at trial, and so the Strickland standard must
> be applied with scrupulous care, lest "intrusive post-trial inquiry" threaten the
> integrity of the very adversary process the right to counsel is meant to serve.
> *Strickland*, 466 U.S., at 689-690, 104 S.Ct. 2052. Even under *de novo* review, the
> standard for judging counsel's representation is a most deferential one. Unlike a later
> reviewing court, the attorney observed the relevant proceedings, knew of materials
> outside the record, and interacted with the client, with opposing counsel, and with
> the judge. It is "all too tempting" to "second-guess counsel's assistance after
> conviction or adverse sentence." *Id.*, at 689, 104 S.Ct. 2052; *see also Bell v. Cone*,

9

535 U.S. 685, 702, 122 S.Ct. 1843, 152 L.Ed.2d 914 (2002); *Lockhart v. Fretwell*, 506 U.S. 364, 372, 113 S.Ct. 838, 122 L.Ed.2d 180 (1993). The question is whether an attorney's representation amounted to incompetence under "prevailing professional norms," not whether it deviated from best practices or most common custom. *Strickland*, 466 U.S., at 690, 104 S.Ct. 2052.

Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult. The standards created by *Strickland* and § 2254(d) are both "highly deferential," *id.*, at 689, 104 S.Ct. 2052; *Lindh v. Murphy*, 521 U.S. 320, 333, n. 7, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997), and when the two apply in tandem, review is "doubly" so, *Knowles*, 556 U.S., at ----, 129 S.Ct. at 1420. The *Strickland* standard is a general one, so the range of reasonable applications is substantial. 556 U.S., at ----, 129 S.Ct. at 1420 . Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied Strickland's deferential standard.

*Harrington v. Richter*, 131 S. Ct. 770, 788 (2011).

2.    *Analysis*

a.  *Failure to Call Alibi Witnesses*

Petitioner first contends that counsel was ineffective for failing to call the witnesses listed in the notice of alibi filed by counsel in the trial court.  According to petitioner, these witnesses–Miranda Olsen, Andy Olsen, and Amber Kurtz–as well as several other witnesses included on a supplemental witness list, would have testified that petitioner was at a birthday party for Miranda Olsen on April 19, 2008, during the time of the controlled buy.  The Michigan Court of Appeals concluded that petitioner could not establish prejudice, because one of the prosecution's own witnesses testified that petitioner was not present during the controlled buy.  *See Peltola*, 2009 WL 3366240, at *3.  This determination was reasonable.

It is petitioner's burden to establish the elements of his ineffective assistance of counsel claim.  *See United States v. Pierce*, 63 F.3d 818, 833 (6th Cir. 1995) (petitioner bears the burden of establishing counsel's ineffectiveness); *Lewis v. Alexander*, 11 F.3d 1349, 1352 (6th Cir. 1993)

(same).  Thus, "a petition for habeas corpus relief based on counsel's failure to call witnesses must present this evidence in the form of the actual testimony by the witness or affidavits." *United States ex rel. Townsend v. Young*, No. 01 C 0800, 2001 WL 910387, at *5 (N.D. Ill. Aug. 8, 2001) (citing *United States v. Ashimi*, 932 F.2d 643, 650 (7th Cir. 1991)); *see also*, *Pittman v. Florida*, No. 8:05-cv-1700, 2008 WL 2414027, at *12 (M.D. Fla. June 11, 2008).  Here, petitioner did not move for an evidentiary hearing in the state courts, and thus did not develop any purported alibi testimony.  Nor has he submitted a single affidavit from any of these witnesses averring to petitioner's whereabouts at the time of the crime and their willingness to testify on petitioner's behalf.  In these circumstances, petitioner has failed to carry his burden of establishing that counsel was ineffective.

Further, even accepting petitioner's representation that these witnesses would have testified that he was at a birthday party at the time of the controlled buy, the Michigan Court of Appeals's determination that petitioner was not prejudiced was reasonable.  First, evidence that petitioner was not at the controlled buy was presented through the testimony of a prosecution witness.  *See* Trial Tr., dated 10/1/08, at 53 (Tramontine testimony).  Second, and more importantly, petitioner's guilt did not depend on his being present at the controlled buy.  Both Munday and Tramontine testified to petitioner's involvement in the packaging of the heroin for sale.  Munday further testified that petitioner made sales, that she made sales at petitioner's behest, and that petitioner received some of the proceeds from the sales.  Tramontine testified that, although he did not see petitioner make any sales himself, petitioner did accompany Munday when she delivered heroin in her car.  And Stacie Strutz testified that she bought heroin directly from petitioner.  *See id.*, dated 9/30/08, at 80-92; *id.*, dated 10/1/08, at 38-53, 63.  Besides having no evidence to support his alibi claim, petitioner does not suggest that his alibi–attendance at a birthday party–covers the entire period over April 18

11

and 19 during which the conspiracy lasted and sales were made.  Because petitioner's purported alibi evidence "would have only covered part of the period charged . . . , and would not have directly refuted the testimony of [his] involvement," petitioner cannot show that he was prejudiced by counsel's failure to call these witnesses.  *United States v. Andrews*, 953 F.2d 1312, 1327 (11th Cir. 1992); *see also*, *United States v. Morrison*, 946 F.2d 484, 501 (7th Cir. 1991); *Ross v. United States*, No. C 09-3023, 2010 WL 419383, at *14 (N.D. Iowa Jan. 29, 2010).  Accordingly, the Michigan Court of Appeals's conclusion that petitioner could not show prejudice was reasonable, and petitioner is not entitled to habeas relief on this claim.

### b.  Failure to Object to Amendment of Information

Petitioner next contends that counsel was ineffective for failing to properly object to the prosecutor's motion to amend the information.  On the first day of trial, prior to any testimony, the prosecutor moved to amend the second amended information to correct the dates of the offense to April 18 and 19.  As the prosecutor explained, the dates were listed correctly on the original information and the first amended information, but had been inadvertently changed on the second amended information.  Counsel offered an objection for purposes of appellate preservation, based on lack of notice to petitioner.  The trial court denied the objection and granted the prosecutor's motion to amend.  *See* Trial Tr., dated 9/30/08 (morning), at 117-18.[3]  The Michigan Court of Appeals rejected petitioner's claim, noting that counsel did object to amendment based on notice, and that because "[t]he original and first amended information included the proper dates," petitioner "suffered no surprise or prejudice from this date change."  *Peltola*, 2009 WL 3366240, at *3.  This

---

[3]This portion of the transcript is not included in the transcripts filed by respondent, which include only the testimony of the witnesses.  The relevant pages are, however, attached to petitioner's *pro se* brief in the Michigan Court of Appeals as Exhibit E.  This brief is included in respondent's Rule 5 filing.

determination was reasonable.

Even if counsel should have voiced a more forceful objection to the prosecutor's motion to amend, petitioner cannot establish prejudice because there is not a reasonable probability that the motion to amend would have been denied. As the court of appeals observed, under state law amendment is permitted at any time "'unless the proposed amendment would unfairly surprise or prejudice the defendant.'" *Id.* (quoting MICH. CT. R. 6.112(H)). Because the original and first amended information provided the correct dates, petitioner cannot claim that he was unfairly surprised by the amendment. Indeed, such an argument would contradict his first claim that counsel was ineffective for failing to present alibi witnesses, as those alibi witnesses purportedly would have testified as to petitioner's whereabouts on the dates reflected in the amendment. Nor can petitioner show that he was deprived of his constitutional right to notice of the charges. "An amendment changing the date of the offense does not implicate due process in the absence of a showing that the defendant was somehow prejudiced in his ability to meet the charge." Rhea v. Jones, 622 F. Supp.2d 562, 584 (W.D. Mich. 2008). In light of the two prior informations charging the correct date, the second amended information–which was subsequently amended–"could not possibly have confused him concerning the alleged date of the offense[.]" *Id.*; *cf. United States v. Groos*, 616 F. Supp. 2d 777, 783 (N.D. Ill. 2008) (permitting amendment of indictment where defendant knew date alleged was incorrect). And because the amendment did not deprive petitioner of adequate notice of the charges, he cannot show a reasonable probability that a further objection by counsel would have succeeded. Thus the Michigan Court of Appeals's rejection of this claim was reasonable, and petitioner is not entitled to habeas relief.

*c. Failure to Investigate*

13

Petitioner also contends that counsel failed to conduct an adequate investigation. Apart from alleging that counsel failed to obtain contradictory statements made by the witnesses, petitioner does not allege what further investigation counsel should have done or what evidence such an investigation would have uncovered. It is petitioner's burden to establish the elements of his ineffective assistance of counsel claim. *See United States v. Pierce*, 63 F.3d 818, 833 (6th Cir. 1995) (petitioner bears the burden of establishing counsel's ineffectiveness); *Lewis v. Alexander*, 11 F.3d 1349, 1352 (6th Cir. 1993) (same). Thus, "a petition for habeas corpus relief based on counsel's failure to call witnesses must present this evidence in the form of the actual testimony by the witness or affidavits." *United States ex rel. Townsend v. Young*, No. 01 C 0800, 2001 WL 910387, at *5 (N.D. Ill. Aug. 8, 2001) (citing *United States v. Ashimi*, 932 F.2d 643, 650 (7th Cir. 1991)); *see also*, *Pittman v. Florida*, No. 8:05-cv-1700, 2008 WL 2414027, at *12 (M.D. Fla. June 11, 2008). Similarly, "[a] defendant who alleges a failure to investigate on the part of his counsel must allege with specificity what the investigation would have revealed and how it would have altered the outcome of the trial." *United States v. Green*, 882 F.2d 999, 1003 (5th Cir. 1989). Here, petitioner has provided no allegation, much less evidence, showing that further investigation by counsel could have uncovered evidence that would have altered the outcome of the trial.

With respect to the contradictory witness statements, the court of appeals rejected petitioner's claim, explaining that "it is clear that defense counsel was aware of and in possession of the statements made by the prosecution's witnesses because he cross-examined those witnesses extensively about their prior inconsistent statements." *Peltola*, 2009 WL 3366240, at *3. This determination is supported by the record, and thus was reasonable. For example, counsel extensively cross-examined Munday regarding inconsistencies between her first and second

14

statements to the police, and between her second statement and her trial testimony. *See* Trial Tr., dated 9/30/08, at 99-109, 116. Counsel also extensively cross-examined Osieczonek regarding inconsistencies between her statement to the police following the controlled buy and her trial testimony. *See id.*, at 67-71, 74. Thus, contrary to petitioner's claim, the record reveals that counsel did have such information in his possession and used it to petitioner's advantage at trial. Thus, the court of appeals's rejection of this claim was reasonable, and petitioner is not entitled to habeas relief.

E.      *Recommendation Regarding Certificate of Appealability*

        1.      *Legal Standard*

As amended by the Antiterrorism and Effective Death Penalty Act, section 2253 provides that a petitioner may not appeal a denial of an application for a writ of habeas corpus unless a judge issues a certificate of appealability. *See* 28 U.S.C. § 2253(c)(1). The statute further provides that "[a] certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). As the Sixth Circuit has noted, this language represents a codification of the Supreme Court's decision in *Barefoot v. Estelle*, 463 U.S. 880 (1983), and "[t]he AEDPA thus makes no change to the general showing required to obtain a certificate[.]" *Lyons v. Ohio Adult Parole Auth.*, 105 F.3d 1063, 1073 (6th Cir. 1997); *accord Slack v. McDaniel*, 529 U.S. 473, 483 (2000). Although the statute does not define what constitutes a "substantial showing" of a denial of a constitutional right, the burden on the petitioner is obviously less than the burden for establishing entitlement to the writ; otherwise, a certificate could never issue. Rather, the courts that have considered the issue have concluded that "'[a] substantial showing requires the applicant to "demonstrate that the issues are debatable among jurists of reason;

15

that a court could resolve the issues (in a different manner); or that the questions are adequate to deserve encouragement to proceed further.'''" *Hicks v. Johnson*, 186 F.3d 634, 636 (5th Cir. 1999) (quoting *Drinkard v. Johnson*, 97 F.3d 751, 755 (5th Cir. 1996) (quoting *Barefoot*, 463 U.S. at 893 n.4)); *accord Slack*, 529 U.S. at 483-84.  Although the substantive standard is the same, "[t]he new Act does, however, require that certificates of appealability, unlike the former certificates of probable cause, specify which issues are appealable."  *Lyons*, 105 F.3d at 1073. (citing 28 U.S.C. § 2253(c)(3)).

Effective December 1, 2009, the newly created Rule 11 of the Rules Governing Section 2254 Cases in the United States District Courts, 28 U.S.C. foll. § 2254, provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rule 11(a), 28 U.S.C. foll. § 2254.  The rule tracks § 2253(c)(3)'s requirement that any grant of a certificate of appealability "state the specific issue or issues that satisfy the showing required by § 2253(c)(2)," Rule 11(a), but omits the requirement contained in the pre-amendment version of Federal Rule of Appellate Procedure 22(b)(1) that the court explain "why a certificate should not issue."  FED. R. APP. P. 22(b)(1) (version effective prior to 2009 amendment); *see id*., advisory committee note, 2009 amendments.  In light of the new Rule 11 requirement that the Court either grant or deny the certificate of appealability at the time of its final adverse order, I include a recommendation regarding the certificate of appealability issue here.

2.    *Analysis*

If the Court accepts my recommendation regarding the merits of petitioner's claims, the Court should also conclude that petitioner is not entitled to a certificate of appealability.  Because petitioner has presented no evidence to support his alibi claim, and because in any event the

purported alibi would not have exonerated petitioner, the resolution of petitioner's ineffective assistance claim based on counsel's failure to call the alibi witnesses is not reasonably debatable. Further, because petitioner has failed to demonstrate how he was prejudiced by the amendment of the information, and because the record shows that counsel was in possession of and effectively used the witnesses' prior inconsistent statements, the resolution of petitioner's remaining ineffective assistance of counsel claims is not reasonably debatable. Accordingly, the Court should deny petitioner a certificate of appealability.

F.    *Conclusion*

In view of the foregoing, the Court should conclude that the state courts' resolution of petitioner's claims did not result in a decision which was contrary to, or which involved an unreasonable application of, clearly established federal law. Accordingly, the Court should deny petitioner's application for the writ of habeas corpus. If the Court accepts this recommendation, the Court should also deny petitioner a certificate of appealability.

III.    <u>NOTICE TO PARTIES REGARDING OBJECTIONS</u>:

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in FED. R. CIV. P. 72(b)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *See Willis v. Secretary of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991). *Smith v. Detroit Federation of Teachers Local*

17

*231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response.  The response shall be not more than five (5) pages in length unless by motion and order such page limit is extended by the Court.  The response shall address specifically, and in the same order raised, each issue contained within the objections.

Dated:  March 19, 2013              S/Paul J. Komives
                                    Paul J. Komives
                                    United States District Judge

I hereby certify that a copy of the foregoing document was served upon counsel of record on March 19, 2013, by electronic and/or ordinary mail.

                                    S/Shawntel R. Jackson
                                    Case Manager